Good morning, Your Honors. I'm Anthony Smearns, representing the United Law Center, which represents the Chohrach's. Of course, we're here today because the plaintiffs, Chohrach's, oppose the defense motion summary judgment because we feel that there is a tribal issue of fact that should be determined by the judge or a jury, and we don't feel that the moving party has sufficiently carried the burden to point to the fact that there is no issue of fact, which would result in a non-shifting to the appellant to move forth evidence. This is a post-signing representation. The loan closed on December 2nd, 2006. Then within a day or two, the homeowners discovered they did not get the loan that they thought they were going to get, which was the closing papers. They did read the papers. This is different from the usual, Your Honor. They did read the papers. Most cases that come before you probably are where they did not read it, which, because if you read Wyatt and other cases, most people don't. In this case, they did, because they're just a bunch of papers, they don't know what they're signing. Well, they didn't when they signed it, but they did a couple days later. Excuse me, Your Honor? They didn't when they signed it, but they did a couple days later. That's right. That's right. That was my question. You're saying they didn't read them at the closing. Yeah. In reality, you know, in real estate transactions, and you've heard this before, but it's very true, I've been involved in hundreds of them over 50 years, the stack comes in, the average person just signs, signs, signs, signs, and it's a notary, doesn't explain it, the title company explains, so most people do not read it, and they do not understand it. Okay. But he did read it afterwards, and he did know that it wasn't a loan. Yeah. I'm sorry. Let's get back to the point. And he did have an opportunity to rescind at that point, and he didn't do it. That's correct, Your Honor. So the loan closed December 2nd. They didn't necessarily read it as 90-some-odd percent of the people did, but within a day or two, they did read things. They say, this isn't the 30-year fixed rate that I thought it was. And the rescission notice was given December 4th, so the three days ran out December 7th. So in that interim period, they did read it, and so this is different. And they did say, hey, you didn't give it to us. Now what happens? The broker and the bank directly make representations to the homeowners who had the point, the right at that time to rescind. And they say, oh, don't worry, you can refinance, and it's the same loan anyway. Counsel, may I ask you, absent those representations, would you agree that the statute of limitations for most of the claims began to run at the time when they discovered that the loan was not as they thought it should be? Would you agree that the statute of limitations began to run? That's generally under 338, Your Honor, of CCP. That's correct. In this case, though, it's not the statute of limitations from the closing. It's the representations made by Mr. Darcy, who is the loan broker, McGee, telling them, in order to get them not to rescind, that don't worry, you can refi. All right. So then, in order to get within the limitations period, you're then relying on a discovery rule, right? In other words, the way that gets you out of the limitations period, if we credit, if we find it adequate, is that they didn't learn for three years that they say that they actually couldn't refinance. Yes, Your Honor. They are asking for the discovery extension of the three-year. That's correct. And what is that? What it is, if you read the closing papers themselves, which is not what we're talking about as far as this, what happened two days later, if you go back and read the papers that were given to them, they don't say that you cannot refi. They do not say that the loan they got was the same as the one they wanted, i.e., the fact they got an adjustable 5-year interest only, that that was the same as a 30-year fixed rate. So that doesn't show up in the papers. So, you know, they believed and they relied on it. Did they have the right to rely? In our opinion, of course, if you read Wyatt, the two cases really do. But then they didn't refinance for a long time. That's the other thing. Yes. And that's in the papers. It shows that the wife had fibromyalgia, all that stuff. But they had nothing to do with the representation. I mean, if they had wanted to refinance, we don't know if they could have refinanced earlier than they tried to. Maybe they could have. That's right. And so what they're saying is they didn't discover in these moving papers that they could not. And that's where they're asking for the tolling, Your Honor, or the extension, is until June of 2010 is when they just ---- It seems to me what they're really doing is relying on a second contract or creating they're saying there was essentially a second contract. It is, yes. A contract saying that you can refinance at any time. Yes. It's not the actual closing paper. It's what was said in order to reduce the ---- But that second contract would have its own problems, right? It would have statute of frauds and other problems. It could. It could. But as it executed, they went ahead. They did ---- they gave it consideration. They did not rescind. I'm sure there are many other things that could get beyond the statute of frauds. I'm sorry? So you're saying, well, maybe they'll lose for some other reason, but they shouldn't lose for a limitations reason? Is that what you're saying? I mean, you're saying, well, maybe ---- I mean, but it seems to me that what you're really alleging is a second real estate contract. Well, it ---- Maybe it's not a real estate contract, so maybe it's not covered by the statute of frauds. Maybe that's the answer. What it is, Your Honor, of course, first we're saying there's no shift in the burden. There is no denial by the bank or the loan broker that they said those things. So they didn't deny it. So we're saying we don't have to go forward. But two good cases are the paper savers case and the Wyatt Union mortgage. May I ask you about the misrepresentations that you are attributing the misrepresentations of the escrow agent and the broker to Bank of America? Because you're suing Bank of America, right? Yes, that's correct. So the misrepresentations you are asserting were made by whom? Okay. In the actual declaration of Mrs. Chodrat, which is in the ---- well, also in the Allegate Wells, that's not Heaven, but the ---- what they said ---- They. When you say they. Okay. Excuse me. I should be more precise. Please. I'm sorry. The homeowners, the borrowers said that both representations were made both directly from the loan broker and directly from Bank of America. So it's not your agency situation. Who was it from Bank of America? Well. That made a misrepresentation. Well, I didn't notice a name, and I understand all the case law that says, of course, as to corporations, you're supposed to name this and that. But there are cases that say when all the information is in the possession of the bank, sometimes those standards are lowered. I'm sorry. Pardon me. Where does it say that Bank of America made representations? It's ---- well, first of all, it's in paragraph 70 of the complaint. But in the deposition of Mrs. Chodrath ---- Well, I'm asking you where it is in your pleadings. I don't have it marked. I, of course, was not the person doing this at the time. But that is what the allegations are. And also ---- By the time you get to summary judgment, you're beyond the allegations of the complaint. And so you have to prove up, you know, at least raise the material issue of fact regarding the case. And so what was there in opposition to the motion for summary judgment that would establish that Bank of America made a misrepresentation? What is there in the record that would establish a representation that could be attributed to Bank of America? Donna's declaration and deposition both say that, but don't they? The declaration does not say that she's ---- Which one, Your Honor, are you looking at? It does say it. It says, when we initially spoke with Bank of America after closing, we told Bank of America that we did not receive the 30-year fixed mortgage. We were told that we could refinance at any time. But it's just very vague. I mean, it doesn't say when exactly. It doesn't say who exactly. But it does say it. Well, it was alleged in paragraph 70 of the complaint, and my understanding ---- it's not my case, you understand ---- Right. That it was in one of the declarations of some evidentiary thing. So I apologize, I don't have that slide. The problem I'm having is that it appears that the plaintiffs lumped everyone into Bank of America, the broker, you know, as well as the escrow, and lumped it all into Bank of America. And, of course, that would not be adequate unless there were some indication that they were speaking on behalf of Bank of America. That's why I'm having difficulty when they say Bank of America promised, without naming someone who was officially linked with Bank of America. I don't think that's adequate to raise an issue of fact. Well, I understand your article. That's what a lot of the ---- most of the case law is exactly what you just said. We're saying that due to the overall circumstances that may be, that should not be followed. But you're absolutely correct in what you just said. But he does say ---- I mean, he said in his deposition, I talked to somebody at Bank of America, and they said we can refinance at any time. It's just a little vague. It doesn't say when, it doesn't say who, but it does say that he spoke to somebody. So he is ---- at any rate, your time is up, and we will give you a minute to work that out. So thank you. Good morning, Your Honors, and may it please the Court, I'm here today on behalf of Defendant Impelli's Bank of America N.A. and B.A.C. home loan servicing. Are you splitting time? Yes, I'm just going to ---- How are you splitting time? Six minutes for B. of A. and four minutes for Coapelli, C&M, McGee. All right. So there is an allegation that he spoke directly to B. of A. It doesn't say when, who. The first time that allegation was made was actually in opposition to B. of A.'s motion for summary judgment. That doesn't seem to be true, as a matter of fact, from what I could tell. What's that? From what I could tell, that doesn't seem to be correct. I don't know why that matters anyway, because it's still an allegation, but it didn't seem to me to be correct. It's in the deposition, for one thing. It's in Mrs. Korach's deposition in their opposition to the ---- Korach's deposition. Korach's deposition and their opposition to the motion. That was presumably before the motion to sum her summary judgment. Yes, it was. All right. So it's not true. It's not true that it was in their complaint, and it was the first time that they had ---- They went back to the same problem as in the other case. But in terms of whether they made it up because they knew you were going to complain about it, it's in the deposition. But, Your Honor, they can't allege, you know, at the first time, they can't oppose a summary judgment motion based on newly-minted factual allegations. It's settled case law that you have to ---- your summary judgment has to be based on claims of ---- factual claims that are in your complaint. You can't manufacture new allegations in opposition. Well, what did they say in the complaint that's inconsistent with that? Anything? Yes, it's very inconsistent. Throughout the complaint, they allege that it was Darcy that made the statement that they could refinance any time. They said the Bank of America didn't ---- he didn't confirm it with the Bank of America? No, they do not make that allegation. All right. So let's put this aside. Let's get to the merits of the question. What is essentially your argument, as I understand it, is it was not reasonable to rely on that representation. Is that your claim? Argument? Yeah. Well, there's two ---- there's two representations that they're making, and one is that this was a ---- that this loan that they got was the same as a 30-year fixed-rate loan. Now, the first problem with that is that it's time-barred. As they have admitted that a day or two after the closing on December 2, 2006, they reviewed the loan documents, and they saw at that time that they did not ---- My understanding is that they're making the two points of a piece. They're saying essentially it was the same for the first five years, which essentially it was, and now you can refinance it at any time, so it all does matter. So let's focus on the refinance at any time, because the other one is sort of immaterial. I mean, it's just part of the same thing. It's a reason why you shouldn't be worrying about this now, because you can ---- for present purposes, it's the same, and you can refinance it. It's not going to hurt you in the short run. In the long run, you can refinance it at any time. That's their story. Okay. We'll focus on that other statement then. They have not come forward at the district court level or here on appeal that there was any evidence that that statement was untrue at the time it was made, even assuming it was made. Now, this is an issue that the district court specifically pressed them on, and you can take a look at pages 10 through 17 of the district ---- It depends whether you read it as a prediction or a guarantee, right? In other words, it is possible to have a promise that you can refinance at any time, and if it's a binding contract, then you can refinance at any time. The other version is that it's a prediction about what's likely to be the case, but that's a different point. The question is why are we looking at it as a prediction rather than as a promise? If we're looking at it as a promise, then we have to have some sort of evidence that this would be a reasonable or justifiable reliance on a statement that you can refinance at any time as a sort of ---- But Bank of America could have a provision that says you can refinance at any time. Could be, right? There could be a contract like that. Right. That's not here. What they're alleging is that there was an oral representation that somebody, you know, both Bank of America and Darcy just both happened to make the same representation that you can refinance at any time. Now, again, they have never come forward with any evidence at the district court over here that any such statement was untrue at the time it was made. But also, there's a second problem with that. If it were a ---- I mean, that's why I said before that it seems to me to read like a separate contract. I mean, the one way to look at it is they said they made a separate contract. Don't worry. You can refinance at any time. There are all kinds of problems with that, I mean, in terms of whether that would be a binding contract. But I'm not sure why it's a limitations period problem. That ---- we haven't made the argument that the limitation applies to that particular statement. You haven't? No. What we said is that there's two different statements that they're pursuing on appeal. The first one is that there is a statement that they ---- that this loan, this 30-year fixed loan, is the same as a ---- as the loan they got, or the loan they got is the same as a 30-year fixed rate loan. They knew that wasn't the case a day or two after closing because they reviewed the loan documents themselves. And those loan documents explicitly disclosed that they got a ---- the terms of the loan that they got, that this was a 5-year fixed rate for the first 5 years at 6.5. So that is the argument we're making as far as being barred by the statute of limitation. Oh, I see. So this is not a limitations argument. So this ---- we believe the statute of limitation applies to that alleged statement because they discovered a day or two after the December 2nd, 2006 closing about the loan they got. Right. So this is sort of the son of the parole evidence argument, except that it's not ---- except that it's the Rosenthal argument because of the change in the law. I'm not sure I quite follow. Well, in other words, California now says that you can't have parole evidence on this question of something like this, right? Well, I believe Your Honor is referring to the River Island case. Right. Yes. But the way we've looked, the way we've sort of diagrammed this out is we believe they're pursuing two statements, two statements that are alleging that we're fraudulent, one being the loan you got is just as good or the same as a 30-year, and a second statement that this is ---- You can refinance it. You can refinance at any time. Now, we believe the statute of limitation applies to that first one. And we understand that. Okay. And as to the second one, you think what? And as to the second statement, we think there's at least two problems why it's not an actionable misrepresentation. The first ---- Why? Because it wasn't false in May, and second, it's not reasonable to rely upon. It's not reasonable to rely upon. A blanket promise that you can refinance any time. The Chorags had ---- I don't understand why it's not reasonable. I mean, if you had a written statement that said, you know, we promise that you can refinance at any time, what would be wrong with that? Well, that would be a little bit different. Here we have an alleged oral promise made by both ---- Well, I understand that. That may, as I say, lead to all kinds of other problems. But why does it make it unreasonable to rely on it if it was actually set as a promise? It would be unreasonable to rely on that as sort of a blanket promise because there's just too many contingent factors at play. There would be the value of a security, the Chorag's income and assets. But people can make stupid promises. But there has to be ---- reliance is an element of fraud. So in order to rely on that as an actionable fraud statement, there would have to be reasonable, justifiable to rely on a blanket promise to refund. All right. If you want to give your colleagues some time, you should do now. All right. Thank you. Because I was, as a lawyer, sitting back there and getting very frustrated. I apologize for taking a little bit of time. Go ahead, please. I'll come up. Good morning. My name is Tom Nickens representing Tim Darcy and Sina McGee. Specifically, I think in this particular situation, if you look at the oral, alleged oral promises as you stated them, I think we have, opens up a whole Pandora's Box of problems for everyone later on, because it's an oral contract, for one thing, so it's numerous violations, statute of fraud. But that may be, but that's not where we are at this point, right? I mean, you've argued that there wasn't reasonable reliance. The question is why isn't there reasonable reliance? Would you agree that if you had a written piece of paper saying, we promise you can refinance at any time, that it would be a promise and it would be reasonable to rely on it? It may not be enforceable, but that's a different question. Potentially, yes. Arguably, yes. Theoretically, yes. But the fact is, is at that time, it probably was true, that the because in 2006, the financial environment and houses and loans, that's the way they were going. But a few years ago, the Bank of America or Mr. Darcy or Bank of America could not have such a promise as a promise, not as a prediction, but as a promise. But the prompt, but they would have to prove, the appellant would have to prove that the promise was false at the time it was made. Okay. As an element of fraud or misrepresentation. I mean, the elements, you know, of misrepresentation require that the falsity be at the time the representation is made. There was no allegations about that. In fact, as pointed out in Bank of America's brief, his appellant's application to Bank of America stated specifically an arm, he was requesting an arm loan at 5% with the five-year interest-only payments. So he signed that paper, and along with, you know, attaching his tax returns, property, and his job, proof of job, all the other things they submit with it to Bank of America for the initial application. So I don't know why he was surprised. The other thing at the time of the signing, he apparently, the Cochran's did that in their home with the notary coming out. My client was not given an opportunity or a chance to advise them, to counsel them, to look at the papers, anything. My client was unaware and never saw the papers until this litigation got going. He, they excluded my client, and then they're now complaining that, you know, one of the things is, is that he's making these representations and then failed to properly advise and counsel him. And didn't he have some duty as a broker to know what the terms were? I'm sorry? Didn't he have some duty as a broker to know what the terms were? Yes. Okay. So why is that, why isn't it his problem? Bank of America sends the, this is to give the district. And he doesn't have some responsibility to find out what they were giving the person that he, he was the broker for? Bank of America sends the papers, the loan docs. I understand that. That doesn't answer my question. Doesn't, my understanding of California law is that. I don't think a loan broker has to run around and chase everyone to look over their shoulder. It would be like an attorney, if I'm representing someone, but he runs into court and pleads guilty on something or no contest, and I wasn't there, how can I advise or counsel him if he's gone off and done it on his own? I mean, in this case you can't do anything on your own, you cannot. And if you try to throw, you try to even withdraw your case or whatever, you can't do it. I'm talking at the lower level. At the lower level as well, my understanding, once you're represented. Okay. Thank you. We'll give you one minute or more, Pat. Is it your position that a promise to make a loan with no statement of terms, no verification of conditions is enforceable? That's not the position. What it is, is they said you can get a refinance and it was stated as a fact, even though some people might say it's as to the future. But what's the terms of that promise? If they, if Bank of America offered, assuming it wasn't usurious, 30 percent interest and 200 percent security, does that satisfy the promise? Obviously, Your Honor, in this case, if we look at contract law and the basics in order to have, I understand what you're saying, and my understanding that doesn't exist here, other than there's a subsequent promise and they told them you can get a refinance and they told them this loan, these loans don't. What about the allegation that he knew it was false at the time, that they knew it was false when they said it? Okay. Well, it's false, or they said it with a reckless disregard, there's also deceit. And what we are saying is that they did not do it. Is there an allegation that when they made the promise, they didn't intend to fulfill it? Let's say it's a promise. Is there any allegation that they, at the time they made it, they didn't intend to fulfill it?   We are saying that there is no evidence that they did it. I know what you're saying, but where is it in either the pleadings or the evidence? In the, let's see, I have, that part I don't have ready right before you. I don't think it's there is the problem. Well, it may be, thank you. May I mention one thing as it clears up with Justice Rawlinson has said. It's in paragraph 5, page 2 of the declaration of Donna Choratch where she said that we spoke with Bank of America after closing and we told the Bank of America we did not receive a 30-year fixed rate. So I wanted to clear that. That was a declaration. Thank you. Your time is up. I'm sorry, Your Honor. Your time is up. You can finish your time. Oh, I'm sorry. I just wanted to say one last thing, if I may. We didn't exclude anybody. We followed what the broker did and Wyatt and paper savers show there's a duty of this broker to sit there and tell and explain much more. Thank you, Your Honor. Thank you very much. The case of Cockrath v. Bank of America is submitted. We will go to Islan v. Holder.
judges: Lynn, Berzon, Rawlinson